## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NY'HIER WILLIAMS** | CASE NO.    2:23cv2132 |
| Plaintiff, | |
| **v.** | |
| **CITY OF PITTSBURGH PUBLIC SCHOOL DISTRICT AND CITY OF PITTSBURGH BOARD OF PUBLIC EDUCATION** | COMPLAINT WITH JURY TRIAL DEMANDED |
| Defendants | |

## COMPLAINT

COMES NOW, Ny'Hier Williams ("Plaintiff"), by his undersigned counsel, and makes the following Complaint against Defendants, City of Pittsburgh Public School District and City of Pittsburgh Board of Public Education (collectively, "School District"), and alleges as follows:

### INTRODUCTION

1.      On January 21, 2022, Ny'Hier Williams was savagely beaten by a fellow student in the hallway of Brashear High School.  Ny'Hier was picked up and slammed headfirst into the ground.  The assailant stomped on his defenseless head five times before a school resource officer was able to pry the assailant away.

2.      As a result of the foreseeable, preventable, and heinous assault, Ny'Hier sustained a major traumatic brain injury that has derailed his life and will continue to plague him indefinitely into the future.

3.      The brutal attack on Ny'Hier on January 21, 2022 followed a long history of unprovoked attacks on Ny'Hier by the same assailant.

4.      Defendants were well aware of the history of unprovoked attacks and took steps

1

(albeit woefully inadequate steps) to attempt to protect Ny'Hier from further assaults, even attempting, unsuccessfully, to relocate the assailant to a different school.

5.      Defendants explicitly represented to Ny'Hier's mother, Chata Williams, that they could and would keep Ny'Hier safe from further attacks.  However, the risk to Ny'Hier's life and safety was so significant that Ny'Hier's mother kept Ny'Hier home from school until the Defendants could provide further reassurances that Ny'Hier would be kept safe.

6.      On January 20, 2022, Ms. Williams went to Brashear High School to speak with Defendants' personnel regarding Ny'Hier's safety and Defendants' personnel informed Ms. Williams and assured her that it was safe to send Ny'Hier back to Brashear High School and that Ny'Hier would be kept safe.

7.      The only reason Ms. Williams sent Ny'Hier back to Brashear High School on January 21, 2022 was due to the assurances by Defendants that Ny'Hier would be kept safe.

8.      Despite Defendants' assurances of safety, when Ny'Hier returned to school on January 21, 2022, he was savagely assaulted and suffered catastrophic and life-altering injuries.

9.      Defendants' promises that Ny'Hier would be kept safe were broken, and Defendants consciously disregarded a great risk of harm to Ny'Hier, acted with deliberate indifference to Ny'Hier's rights and safety, and their conduct shocks the conscience.  Defendants must be held liable.

## PARTIES

10.     Plaintiff, Ny'Hier Williams, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 2827 Sarah Street, Pittsburgh, Pennsylvania 15203.

11.     Defendant, City of Pittsburgh Public School District, is a governmental entity organized and existing under the laws of the Commonwealth of Pennsylvania, with a business

address located at 341 S. Bellefield Avenue, Pittsburgh, Pennsylvania 15213.

12.     At all times relevant hereto, Defendant, City of Pittsburgh Public School District, was acting by and through its agents, employees, servants, and/or workers, who were acting within the course and scope of their agency, employment, and/or service with Defendant, City of Pittsburgh Public School District.

13.     Defendant, Pittsburgh Board of Public Education, is a governmental entity organized and existing under the laws of the Commonwealth of Pennsylvania, with a business address located at 341 S. Bellefield Avenue, Pittsburgh, Pennsylvania 15213.

14.     At all times relevant hereto, Defendant, Pittsburgh Board of Public Education, was acting by and through its agents, employees, servants, and/or workers, who were acting within the course and scope of their agency, employment, and/or service with Defendant, Pittsburgh Board of Public Education.

15.     For purposes of this Complaint, Defendants, City of Pittsburgh Public School District and Pittsburgh Board of Public Education, shall be collectively referred to as the "School District."

## JURISDICTION AND VENUE

16.     Jurisdiction in this Court is invoked pursuant to 42 U.S.C. § 1983 and 1988 and the Fourteenth Amendment to the United States Constitution.

17.     Plaintiff also invokes the pendent jurisdiction of this Court to hear and decide any potential claims arising under state law.

18.     The practices and violations of Plaintiff's substantive due process rights alleged herein were committed in the Western District of Pennsylvania, wherein, upon all reasonable belief, all parties reside, govern and operate.  Therefore, venue in this Court is invoked pursuant

to 28 U.S.C. §§ 1331 and 1343.

<u>FACTUAL ALLEGATIONS</u>

19.     Ny'Hier attended school in the West Allegheny School District from Kindergarten through fifth grade, next completing sixth through eighth grade at Urban Pathways Charter School 6-8.

20.     Ny'Hier entered Brashear High School in ninth grade.

21.     Brashear High School is a part of Defendant School District and, upon information and belief, the teachers, staff, and officials working at Brashear High School are agents and/or employees of Defendant School District.

22.     When Ny'Hier entered Brashear High School in ninth grade, Defendant School District was aware that Ny'Hier had a history of learning difficulties.

23.     Ny'Hier required special education services and entered Brashear High School with an Individualized Education Plan (IEP).  Upon information and belief, Ny'Hier's IEP team noted that Ny'Hier was often subjected to "negative peer interactions."

24.     Defendant School District's employee and/or agent, Ms. Brenda Cassler, was assigned to monitor Ny'Hier's IEP.

25.     While at Defendant School District's Brashear High School, Ny'Hier began experiencing significant bullying and harassment issues within the school setting.

26.     On September 8, 2021, Ny'Hier was the victim of the first of several unprovoked and brutal attacks inflicted by a fellow Brashear High School student named Quincey Garland ("Garland").

27.     On September 8, 2021, Ny'Hier was outside Brashear High School with his friend and fellow Brashear High School student, Bryce, waiting for the bus to take him home.  Ny'Hier

and Bryce were approached by Garland and one other student, and the student with Garland attempted to provoke Bryce while Garland began to confront and attempt to provoke Ny'Hier.

28.     Ny'Hier attempted to ignore Garland and insisted that he would not fight Garland.

29.     Refusing to accept Ny'Hier's response, Garland attacked Ny'Hier and struck Ny'Hier in the side of his head, knocking him to the ground.

30.     Ny'Hier was ultimately taken to the hospital and diagnosed with a concussion.

31.     This unprovoked attack on Ny'Hier was captured and recorded by other students on their cell phones.

32.     When Defendant School District was alerted to the assault, Defendant School District chose to suspend all four students involved in the altercation, despite the descriptions of the event provided by Ny'Hier and Bryce and the video evidence supplied by other students.

33.     When Ms. Williams questioned Defendant School District's staff regarding the rationale for suspending Ny'Hier, who was merely the victim of an unprovoked attack, Defendant School District outrageously took the unsupported position that the incident was the result of "gang activity."

34.     After serving his unjustified suspension, Ny'Hier was permitted to return to Brashear High School on September 14, 2021.

35.     On September 14, 2021, the very first day Ny'Hier was back at Brashear High School, Garland immediately sought out Ny'Hier and confronted him, spit in his face, and attacked him again.

36.     Upon information and belief this second unprovoked attack on Ny'Hier was also captured on video by other students.

37.     Rather than providing Ny'Hier with the support he required as a victim of a second

unprovoked assault inflicted by Garland, Defendant School District elected to suspend Ny'Hier again, this time for "inciting melee."

38.     Frustrated with Defendant School District's repeated failures to support and protect Ny'Hier in the face of these repeated and unprovoked attacks, Ms. Williams requested a meeting with the students involved in the incidents, as well as their parents, and all relevant staff of Defendant School District.

39.     Ms. Williams requested that Ms. Cassler, the special education teacher assigned to monitor Ny'Hier's IEP, also participate in the meeting to ensure appropriate supports were implemented moving forward.  Ms. Williams also explicitly requested that the building principal attend the meeting.

40.     In response, Defendant School District scheduled a meeting and reassured Ms. Williams that the building principal would attend the meeting.

41.     When the meeting commenced on September 29, 2021, however, the building principal was noticeably absent.  Additionally, Garland's grandmother and/or guardian refused to participate in the meeting, insisting that Garland should handle it himself as he was already eighteen years old.

42.     At the September 29, 2021 meeting, Ms. Williams clearly communicated that Ny'Hier no longer felt safe in Brashear High School and was extremely anxious as a result of the repeated unprovoked attacks inflicted by Garland and Defendant School District's failure to protect him.

43.     Despite this, a safety plan was not developed, and no additional supports were offered or incorporated into Ny'Hier's IEP as a result of the September 29, 2021 meeting.

44.     Garland's next unprovoked and brutal attack on Ny'Hier occurred on December

15, 2021.

45.     On December 15, 2021, Ny'Hier requested permission to use the restroom and subsequently entered the restroom.  Although there are no surveillance cameras located in the restroom, upon information and belief, Defendant School District's surveillance cameras captured Garland entering the same restroom soon after Ny'Hier.

46.     While Ny'Hier was trying to use the restroom in peace, Garland violently attacked him yet again.  Once the violence began, another student recorded the assault on their cell phone. Despite efforts by another student to intervene, Garland continued the assault.

47.     Defendant School District learned of Garland's third deliberate and unprovoked attack on Ny'Hier but instead of finally taking action to protect Ny'Hier, Defendant School District again decided to unjustifiably suspend Ny'Hier.

48.     Ms. Williams expressed her extreme frustration that the violence against Ny'Hier was escalating but the only action Defendant School District would take was suspending Ny'Hier, the victim of the attacks.  Ms. Williams explained to a school resource officer that she feared her son could be killed if actions were not taken to stop Garland.

49.     As a result of the December 15, 2021 attack, Ny'Hier was again taken to the hospital.

50.     Upon information and belief, the school resource officer ultimately determined that the December 15, 2021 assault warranted criminal charges, and a magistrate action was initiated against Garland.

51.     Terrified for her son's safety, Ms. Williams was unwilling to send Ny'Hier back to Brashear High School without reassurances from Defendant School District that Ny'Hier would be kept safe and protected from Garland.

52.     Defendant School District informed Ms. Williams that Garland would not be returning to Brashear High School and that the process of sending Garland to a different school had been initiated.

53.     Defendant School District's representation was hollow, and on December 20, 2021, Ms. Williams spoke with Ny'Hier's IEP supervisor, Ms. Cassler, and informed her that neither she nor Ny'Hier felt safe at school.

54.     Upon information and belief, on January 3, 2022, Ms. Cassler called Ms. Williams and reassured her that Garland was not in school, per the District's Parent Contact Log.

55.     However, upon Ny'Hier's return to school from holiday break, Ny'Hier was surprised and terrified to see Garland in school.

56.     Upon information and belief, Defendants inadvertently and mistakenly allowed Garland back into the school.

57.     When Ny'Hier informed his mother that Garland was back in Brashear High School, Ms. Williams attempted to contact Principal Safran and Vice Principal Askin but was unable to reach them and never received a return call.

58.     Ms. Williams then went to Brashear High School to speak with the Vice Principal in person and directly asked the Vice Principal what steps were being taken to protect Ny'Hier by ensuring that Garland was not allowed back into the school.

59.     In response, the Vice Principal assured Ms. Williams that Defendant School District's staff could and would keep Ny'Hier safe, and further explained that Garland was only attending temporarily while paperwork for a new placement for him was processed.

60.     Ms. Williams decided that Ny'Hier would be kept home from school in order to protect him from further violent assaults until Defendant School District provided sufficient

reassurance that Ny'Hier would be kept safe.

61.     On the morning of January 20, 2022, Defendant School District informed and represented to Ms. Williams that Ny'Hier should be sent back to school because Defendant School District would be able to keep him safe.

62.     Relying on Defendant School District's representations and assurances that Ny'Hier would be kept safe, Ms. Williams reluctantly allowed Ny'Hier to return to school.

63.     On January 21, 2022, Ny'Hier reported to school following a two-hour weather delay.

64.     Very soon after Ny'Hier arrived to school, Garland sought him out and inflicted a brutal, heinous, and inhuman attack on Ny'Hier.

65.     Video of the incident shows Garland pick Ny'Hier up and slam him headfirst into the unforgiving floor, inflicting a significant head injury.



66.     As Ny'Hier lay helpless on the ground, Garland stomped on his head three times before someone attempted to drag him away.  Garland fought free and stomped on Ny'Hier's head two more times.















67.    The only reason Ny'Hier returned to school on January 21, 2022 was because Defendant School District's personnel informed Ms. Williams that Ny'Hier would be kept safe and he should be sent back to school.

68.    Defendant School District pitifully and outrageously failed to protect Ny'Hier from Garland—the same student who had attacked Ny'Hier on three prior occasions—despite knowing of the risk and knowing that Ny'Hier needed protection and despite assuring Ms. Williams that Ny'Hier would be kept safe.

69.    When Garland was carrying out the unconscionable attack on Ny'Hier, instead of taking any action whatsoever to protect him, Defendant School District's personnel decided it was more prudent to restrain Ny'Hier's friend, Bryce, who was attempting to protect Ny'Hier.



70.     The viscous assault carried out by Garland on January 21, 2022 was the most severe of the four attacks.

71.     Due to the history of Garland targeting and attacking Ny'Hier on no less than three prior occasions, all of which Defendant School District was aware of, it was foreseeable to Defendant School District that if proper and adequate measures were not in place and enforced on January 21, 2022 and that if Ny'Hier was told he could safely come back to school without such measures being implemented and enforced, that he would be subjected to yet another attack by Garland.

72.     Defendant School District thus created an opportunity for Garland to brutalize Ny'Hier yet again given that the only reason Ms. Williams reluctantly sent Ny'Hier back to Brashear High School was due to the assurances she received from Defendant School District that Ny'Hier would be kept safe.

73.     The harm caused to Ny'Hier by Garland was foreseeable, predictable, and fairly

direct.  Defendant School District knew or should have known that failing to implement and enforce an adequate protective measures and failing to take sufficient action to protect Ny'Hier from Garland would result in yet another attack and severe injuries or even death to Ny'Hier.

74.     Based on the history of attacks and conduct of Defendant School District, as aforesaid, there existed a relationship between Defendant School District and Ny'Hier such that Ny'Hier was a foreseeable victim of Garland's acts.

75.     Had Defendant School District not affirmatively used its authority to instruct Ms. Williams to send Ny'Hier back to school on the basis of Defendant School District's assurances that Ny'Hier would be kept safe, thus exposing him to the danger presented by Garland, this final attack never would have occurred.  Defendant School District's affirmative use of its authority created a danger to Ny'Hier by bringing him back into Brashear High School despite the danger and risk presented by Garland's presence.

76.     Defendant School District was not confronted with a hyperpressurized environment and had the time and opportunity to make unhurried judgments concerning how to protect Ny'Hier and how to develop, implement, and enforce sufficient and adequate protective measures.

77.     Instead, Defendant School District acted with deliberate indifference to and willful disregard of Ny'Hier's health, safety, and welfare.

78.     Defendant School District consciously disregarded a great risk of harm to Ny'Hier.

79.     Defendant School District acted with a degree of culpability that shocks the conscious.

80.     As a direct and proximate result of previously described actions and inactions, negligence, gross negligence, recklessness, and deliberate indifference to Ny'Hier's constitutional rights by Defendant School District, Ny'Hier suffered and is suffering from severe, disabling, and

catastrophic injuries, including but not limited to: a traumatic brain injury; post-concussion syndrome; major neurocognitive disorder due to traumatic brain injury; slowed motor activity; altered sleep patterns; recurrent and unrelenting headaches and head pain; chronic pain; nausea; dizziness; balance problems; impaired concentration; poor short-term memory; hypersensitivity to light; sounds; smells; social isolation; difficulty with following conversations; episodic aggressive behaviors; impaired vision; impaired logical reasoning; impaired common sense reasoning; overall brain dysfunction; impaired appetite; obsessional thought and compulsive behaviors; anxiety; depression; post-traumatic stress disorder; other orthopedic injuries, mental, psychological, and emotional injuries and pain and suffering; acute and chronic physical pain and suffering; loss of life's pleasures, past, present, and future; loss of earnings and wages and loss of earnings capacity, past, present, and future; hospital, medical, and rehabilitation expenses past, present, and future, including medical equipment, supplies, and other medical care and treatment; other psychological, neurological, and psychiatric injuries, the full extent of which is yet to be determined and some or all of which may be permanent in nature.

    (a)    As a direct and proximate result of the conduct of Defendant School District, Plaintiff has in the past required, continues to require, and may in the future require, medical treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempt to alleviate and/or cure his condition.

    (b)    As a direct and proximate result the conduct of Defendant School District, Plaintiff has in the past, and continues to suffer pain, disfigurement, scarring, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, and other intangible losses.

    (c)    As a direct and proximate result of the conduct of the Defendant School District, Plaintiff has been prevented and will be prevented in the future from performing his usual duties, activities, occupations and avocations and has suffered a loss of earnings and a loss of earning capacity.

81.     Defendants are jointly and severally liable for the injuries and damages alleged herein.

## COUNT I

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY AS A RESULT OF A STATE-CREATED DANGER ENFORCEABLE VIA 42 U.S.C. § 1983

### PLAINTIFF v. ALL DEFENDANTS

82.     Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference the same as though fully set forth herein.

83.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of Defendant School District that resulted in the injuries suffered by Ny'Hier Williams.

84.     All acts taken by Defendant School District were taken under color of law as defined by 42 U.S.C. § 1983, were under the pretense and color of law in their official capacity, and under the pretense of the statutes, ordinances, policies, practices, customs, regulations and/or usages of Defendant School District and/or the Commonwealth of Pennsylvania.

85.     Defendants were all "persons" pursuant to 42 U.S.C. § 1983.

86.     More specifically, at all times relevant hereto, Ny'Hier possessed both substantive and procedural due process rights to be free from state occasioned and/or created dangers which caused harm to his bodily integrity and human dignity, and which are protected by the United States Constitution.

87.     It was an unreasonable and unacceptable violation of Defendant School District's duties and responsibilities to entice Ms. Williams to send Ny'Hier back to Brashear High School by assuring her that Ny'Hier would be kept safe from Garland despite not developing, enacting,

and/or enforcing sufficient and adequate protective measures.

88.     Given the history of assaults carried out by Garland on Ny'Hier, including assaults on September 8, 2021, September 14, 2021, and December 15, 2021, all of which Defendant School District was aware of, and given Ny'Hier's IEP which found that Ny'Hier was the subject of negative peer interactions, it was clearly foreseeable to Defendant School District that causing Ny'Hier to return to Brashear High School while Garland was present would expose Ny'Hier to a substantial risk of serious harm.

89.     Despite Defendant School District's knowledge and the clear foreseeability of harm to Ny'Hier inflicted by Garland, Defendant School District failed to take reasonable steps and enact and implement reasonable protective measures, policies, plans, practices, and/or procedures to avoid the harm.

90.     In bringing Ny'Hier back to Brashear High School despite Garland's attendance at school and the long history of repeated attacks on Ny'Hier by Garland, Defendant School District was not confronted by a hyperpressurized environment requiring hurried deliberation and instead had the luxury of the time needed to develop, enact and implement reasonable protective measures, policies, plans, practices, and/or procedures to avoid the harm.  Extensive and thoughtful deliberation by Defendant School District was possible.

91.     Through its conduct described herein, Defendant School District acted with a degree of culpability that shocks the conscious and acted with deliberate indifference to and willful disregard of Ny'Hier's health, safety, and rights.

92.     At all times relevant hereto, Defendant School District was aware of and acted with deliberate indifference to the extreme and unacceptable dangers posed to Ny'Hier by Garland's attendance at Brashear High School.

93.     As a result of the long history of assaults carried out on Ny'Hier by Garland, and Defendant School District's knowledge of same, a relationship existed between Defendant School District and Ny'Hier such that Ny'Hier was a foreseeable victim of Garland's acts.

94.     The only reason Ms. Williams reluctantly permitted Ny'Hier to return to Brashear High School—and thus enter the dangerous environment created by Defendant School District— was due to Defendant School District's assurances that measures were in place and that Ny'Hier would be kept safe.

95.     Despite Defendant School District's assurances and representations, it either failed to develop, implement, and enforce sufficient protective measures and/or failed to adequately develop, implement, and enforce sufficient protective measures.

96.     Defendant School District thus affirmatively used its authority in a way that created a danger to Ny'Hier and/or rendered Ny'Hier more vulnerable to the danger presented by Garland than he would have been had Defendant School District not acted at all.  Had Defendant School District not acted at all, Ny'Hier would have been kept home from school until such time that Garland was no longer in attendance.

97.     As a direct and proximate result of Defendant School District's unconstitutional acts as described herein, Ny'Hier suffered the severe and catastrophic injuries and violation of his Constitutional rights as described and averred herein.

**WHEREFORE**, Plaintiff demands judgment against Defendants, City of Pittsburgh Public School District and City of Pittsburgh Board of Public Education, jointly and severally, separate sums in excess of the jurisdictional threshold in compensatory damages, delay damages, and for all other damages as may be permitted pursuant to applicable law, together with interest, costs and attorney's fees.

**COUNT II**

**VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY TO HUMAN DIGNITY AND BODILY INTEGRITY ENFORCEABLE VIA 42 U.S.C. § 1983**

**PLAINTIFF v. ALL DEFENDANTS**

98.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference the same as though fully set forth herein.

99.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of Defendants that resulted in the injuries suffered by Ny'Hier Williams.

100.    Defendants are state actors as defined in 42 U.S.C. § 1983.

101.    All acts taken by Defendant School District were taken under color of law defined by 42 U.S.C. § 1983, were under the pretense and color of law in their official capacity, and under the pretense of the statutes, ordinances, policies, practices, customs, regulations, and/or usages of Defendant School District and/or the Commonwealth of Pennsylvania.

102.    At all times relevant hereto, Ny'Hier Williams possessed a liberty interest in the freedom from injury to human dignity and bodily integrity, which rights are secured under the 4th and 14th Amendments to the Constitution of the United States, and by 42 U.S.C. § 1983.

103.    Defendant School District developed policies, practices, plans, and procedures and took actions and/or failed to act in ways in violation of the Constitution of the United States and which were contrary to Federal protection of the safety, rights, health, and welfare of Ny'Hier Williams, and/or failed to develop policies, practices, plans, and procedures that were in accord with the Constitution of the United States and Federal protection of the safety, rights, health and welfare of Ny'Hier Williams.

18

104.     It was an unreasonable and unacceptable violation of Defendant School District's duties and responsibilities to entice Ms. Williams to send Ny'Hier back to Brashear High School by assuring her that a safety plan was in place and that Ny'Hier would be kept safe from Garland despite not developing said safety plan and/or developing an inadequate safety plan, failing to implement it, and/or failing to enforce it.

105.     Given the history of assaults carried out by Garland on Ny'Hier, including assaults on September 8, 2021, September 14, 2021, and December 15, 2021, all of which Defendant School District was aware of, and given Ny'Hier's IEP which found that Ny'Hier was the subject of negative peer interactions, it was clearly foreseeable to Defendant School District that causing Ny'Hier to return to Brashear High School while Garland was present would expose Ny'Hier to a substantial risk of serious harm.

106.     Despite Defendant School District's knowledge and the clear foreseeability of harm to Ny'Hier inflicted by Garland, Defendant School District failed to take reasonable steps and enact and implement reasonable protective measures, policies, plans, practices, and/or procedures to avoid the harm.

107.     In bringing Ny'Hier back to Brashear High School despite Garland's attendance at school and the long history of repeated attacks on Ny'Hier by Garland, Defendant School District was not confronted by a hyperpressurized environment requiring hurried deliberation and instead had the luxury of the time needed to develop, enact and implement reasonable protective measures, policies, plans, practices, and/or procedures to avoid the harm.  Extensive and thoughtful deliberation by Defendant School District was possible.

108.     Through its conduct described herein, Defendant School District acted with a degree of culpability that shocks the conscious and acted with deliberate indifference to and willful

disregard of Ny'Hier's health, safety, and rights.

109.    At all times relevant hereto, Defendant School District was aware of and acted with deliberate indifference to the extreme and unacceptable dangers posed to Ny'Hier by Garland's attendance at Brashear High School.

110.    As a result of the long history of assaults carried out on Ny'Hier by Garland, and Defendant School District's knowledge of same, a relationship existed between Defendant School District and Ny'Hier such that Ny'Hier was a foreseeable victim of Garland's acts.

111.    The only reason Ms. Williams reluctantly permitted Ny'Hier to return to Brashear High School—and thus enter the dangerous environment created by Defendant School District— was due to Defendant School District's assurances that an adequate safety plan was in place and Ny'Hier would be kept safe.

112.    Despite Defendant School District's assurances and representations, it either failed to develop, implement, and enforce a safety plan and/or failed to adequately develop, implement, and enforce a safety plan.

113.    Defendant School District thus affirmatively used its authority in a way that created a danger to Ny'Hier and/or rendered Ny'Hier more vulnerable to the danger presented by Garland than he would have been had Defendant School District not acted at all.  Had Defendant School District not acted at all, Ny'Hier would have been kept home from school until such time that Garland was no longer in attendance.

114.    As a direct and proximate result of Defendant School District's unconstitutional acts as described herein, Ny'Hier suffered the severe and catastrophic injuries and violation of his Constitutional rights as described and averred herein.

115.    Defendant School District knew or should have known that its actions and/or

inactions would result in injury to and denial of constitutional rights of Ny'Hier Williams.

116.    As a direct and proximate result of Defendant School District's negligence, gross negligence, reckless conduct, willful and wanton disregard for the safety of Ny'Hier Williams, and deliberate indifference to the health and safety of Ny'Hier Williams, Ny'Hier was caused to suffer the catastrophic and severe injuries and damages alleged herein and the deprivation of his liberty interest and was caused to suffer injury to his human dignity and bodily integrity, without due process of law guaranteed by the 14th Amendment of the United States Constitution and in violation of Ny'Hier's 4th Amendment rights.

117.    Defendant School District's denial and violation of Ny'Hier's rights under the 4th and 14th Amendments to the United States Constitution was egregious, irrational and objectively unreasonable.

**WHEREFORE**, Plaintiff demands judgment against Defendants, City of Pittsburgh Public School District and City of Pittsburgh Board of Public Education, jointly and severally, separate sums in excess of the jurisdictional threshold in compensatory damages, delay damages, and for all other damages as may be permitted pursuant to applicable law, together with interest, costs and attorney's fees.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

*/s/ Larry Bendesky*
Larry Bendesky
Jeffrey P. Goodman*
Samuel B. Dordick*
**SALTZ MONGELUZZI BENDESKY P.C.**
One Liberty Place

1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
sdordick@smbb.com

*Pro Hac Vice application forthcoming*