IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NY'HIER WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF PITTSBURGH PUBLIC SCHOOL DISTRICT AND CITY OF PITTSBURGH BOARD OF PUBLIC EDUCATION,<br><br>    Defendants. | Civil Action No. 2:23-cv-02132-NR<br><br><br>Judge J. Nicholas Ranjan |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

Ny'Hier Williams brings two 42 U.S.C § 1983 claims against the City of Pittsburgh Public School District and Board of Education ("District"). He alleges the District violated his constitutional rights when it failed to protect him from the violence of a fellow student after the District assured his safety. Mr. Williams alleges that the District created the danger that led to his harm. But these are classic allegations of omission—a claim of inaction and not action. It is clearly established by the United States Supreme Court and the Third Circuit that such allegations cannot support a §1983 claim. The crux of the Complaint is that the District expressed its intent to keep Mr. Williams safe *and then failed* to keep him safe which resulted in harm. The District's lack of affirmative action is fatal to Mr. Williams' state-created danger claim.

Additionally, because Mr. Williams fails to sufficiently allege a state-created danger claim—and thus fails to allege a constitutional violation—there can be no derivative municipal claim against the District under *Monell*. Mr. Williams first alleges the District "developed policies,

practices, plans, and procedures" that caused a deprivation of his constitutional rights. But he does not identify *what* these policies were, *who* created them, *how* their implementation caused a deprivation of his constitutional rights, or *what* constitutional right he was deprived of. Without factual allegations to support this conclusory claim, it must be dismissed. Next, he alleges that his constitutional rights were violated when a district policy maker—the Vice Principal of Brashear High School—falsely assured Mr. Williams' safety. But Mr. Williams does not allege, nor does Pennsylvania law declare, that the Vice Principal had final, unreviewable discretion to make a decision or take an action. And even if he did, Mr. Williams fails to identify what constitutional right her assurance deprived him of. Finally, Mr. Williams alleges that the District acted with a deliberate indifference to his constitutional rights. It is well established that public schools do not have a constitutional duty to protect students from other students. Harm caused by student-on-student bullying is not a constitutional harm that *Monell* protects against. *Morrow v. Balaski*, 719 F.3d 160, 171 (3d Cir. 2013) (en banc). Mr. Williams' Complaint should be dismissed.

## FACTUAL ALLEGATIONS

Mr. Williams and Quincey Garland attended Brashear High School, a school in the Pittsburgh Public School District. (ECF No. 1, ¶ 20, 21). On September 8, 2021, Garland allegedly attacked Mr. Williams outside school. (*Id.* at ¶ 27, 29). The District learned of this attack and suspended all four students involved in the altercation. (*Id.* at ¶ 32). But when Mr. Williams returned to school, Garland attacked him again. (*Id.* at ¶ 35). Garland and Mr. Williams were suspended a second time. (*Id.* at ¶ 37). Mr. Williams' mother then requested a meeting with the students involved in the altercations, as well as their parents and District staff. (*Id.* at 38). There,

she expressed concern about the District's failure to protect her son. (*Id*. at ¶ 42). But shortly after this meeting, Garland attacked Mr. Williams again. (*Id*. at 46).

After this third attack, Ms. Williams went to Brashear High School and asked Vice Principal Askin what steps were being taken to protect her son. (*Id*. at ¶ 58). In response, Vice Principal Askin assured Ms. Williams that the District would keep her son safe and explained that Garland was attending school temporarily. (*Id*. at ¶ 59). Ms. Williams decided that her son would be kept home from school until the District provided sufficient assurances. But on January 20, 2022, after the District again told her it would keep him safe, Ms. Williams allowed her son to return to school. (*Id*. at ¶ 62). Soon after Mr. Williams arrived, Garland attacked him. (*Id*. at ¶ 64). A school resource officer eventually restrained Garland, but Mr. Williams suffered significant injuries. (*Id*. at ¶ 65).

Mr. Williams now brings two claims against the District under 42 U.S.C § 1983. He alleges that the District endangered him—and thus denied him substantive due process under the Fourteenth Amendment—by "pitifully and outrageously fail[ing] to protect [him] from Garland … despite knowing of the risk and knowing that [he] needed protection[.]" (*Id*. at ¶ 68). Mr. Williams also alleges that the District had notice of Garland's bullying but failed to adequately address it. (*Id*. ¶¶ 104-107, 112). Plaintiff also alleges that Defendants "developed policies, practices, plans, and procedures and took actions and/or failed to act in ways in violation of the Constitution[.]" (*Id*. ¶ 103). And that as a result of the District's "deliberate indifference" to his health and safety, he suffered "injury to his human dignity and bodily integrity." (*Id*. ¶ 116). These claims fail as a matter of law.

## **LEGAL STANDARD**

In deciding a Rule 12(b)(6) motion to dismiss of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded facts and draw reasonable inferences in the light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3rd Cir. 2002). Although a plaintiff need not plead detailed factual allegations, the plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## **ARGUMENT**

Mr. Williams fails to state a claim under 42 U.S.C. § 1983. In pertinent part, § 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id*. In a § 1983 claim, a plaintiff must sufficiently plead that he has been deprived of a "right secured by the Constitution and the laws of the United States… by a person acting under color of state law." *Kneipp v Tedder*, 95 F.3d 1199, 1204 (quoting *Mark v Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). This Statute does not "create a substantive right, it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Id.* (citing *Baker v McCollan*, 443 U.S. 137, 144n (1979)). The first question to be addressed is whether the Plaintiff has sufficiently plead a violation of his Constitutional right. If not, the analysis stops there and the complaint must be dismissed. If he has sufficiently pled a violation,

then the next question is whether he has sufficiently pled the existence of a policy or custom that proximately caused the constitutional violation. *See Comegar v. City of Chester*, No. 20-CV-5328, 2022 WL 15524953 (E.D. Pa. Oct. 26, 2022) (quoting *M.B. ex rel. T.B. v. City of Philadelphia*, No. 00-cv-5223, 2003 WL 733879, *6 (E.D. Pa. Mar. 3, 2003)).

### A. Mr. Williams' § 1983 Claims Fail Because He Has Not Sufficiently Pled a Constitutional Violation.

#### 1. Count I – Violations of the Fourteenth Amendment Due Process Clause for Injury as a Result of a State-Created Danger

Mr. Williams has not sufficiently pled a constitutional violation. Invoking the substantive component of due process, Mr. Williams alleges that the District violated a liberty interest by failing to protect him from the assaults inflicted by a fellow student. But "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Supreme Court in *DeShaney* stated that "the Due Process Clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id*. at 196. It further stated that "[i]n the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* at 200. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to

5

act on his own behalf. *Id*. citing *Estelle v. Gamble*, 429 U.S 97 at 103, 97 S.Ct., 285 at 290, 50 L.Ed.2d 251 (1976).

There are two exceptions to the rule that a governmental entity owes no duty to protect: (1) when the government and the plaintiff hold a "special relationship", that is a custodial relationship and (2) when the state creates the danger. *Kneipp v. Tedder*, 95 F.3d 1199, 1201, 1204-1205 (3d Cir. 1996). The former applies when a special relationship has been established because "the State takes a person into its custody and holds him there against his will." *DeShaney*, at 199–200, 109 S.Ct. 998. The latter applies if the state's own actions create the very danger that causes the injury. *Kneipp*, 95 F.3d at 1201.

Mr. Williams' Complaint raises both theories. He alleges: (1) "[a]s a result of the long history of assaults carried out on [him] by Garland, and Defendant School District's knowledge of same, a relationship existed between Defendant School District and [him] such that he was a foreseeable victim of Garland's acts."; and (2) the District "affirmatively used its authority in a way that created a danger to [him] and/or rendered [him] more vulnerable to the danger presented by Garland than he would have been had Defendant School District not acted at all." (ECF No. 1, ¶¶ 93, 96). Because Mr. Williams has not adequately alleged facts sufficient to allege a constitutional violation under either theory, his Complaint should be dismissed.

### a. Mr. Williams Has Not Adequately Alleged Circumstances Giving Rise to a "Special Relationship" Between Him and Defendants.

Third Circuit precedent forecloses Mr. Williams' assertion that a "special relationship" existed between him and the District. A special relationship does not exist between public schools and their students. *See Morrow v. Balaski*, 719 F.3d 160, 170-77 (3d Cir. 2013). In *Morrow*, Brittany and Emily Morrow endured a series of physical assaults by Anderson, a fellow student.

6

*Id*. at 164. One time, Anderson physically attacked Brittany in the school's lunchroom. *Id*. The school suspended both girls, and Anderson was criminally charged. *Id*. Anderson then attacked the Morrows on three more occasions. *Id*. These incidents were reported to school officials. *Id*. But instead of removing Anderson from school, school officials advised the Morrows to consider another school for their children. *Id*. at 165.

The Morrows sued, alleging a violation of their Fourteenth Amendment substantive due process rights. *Id*. They acknowledged that the Due Process Clause does not generally impose an affirmative duty on the state to protect individuals from harm caused by private citizens. *Id*. But they argued that the general rule did not apply because the school had a "special relationship" with Brittany and Emily. *Id*. The Third Circuit rejected this argument. In doing so, the court specifically rejected plaintiffs' arguments that a special relationship arose from compulsory school attendance laws and the concomitant *in loco parentis* authority that schools necessarily exercise over students. *Id*. at 171.

This case is no different: Mr. Williams has not adequately alleged circumstances giving rise to a "special relationship" between him and the District. He claims such a relationship was created by "the long history of assaults carried out on [him] by Garland, and Defendant School District's knowledge of same." (ECF No. 1, at ¶¶ 74, 93, 110). But these facts are no different from the ones presented in *Morrow*. As made clear by the Third Circuit in that case, such facts do not give rise to a "special relationship." Nor has Mr. Williams pled any type of custodial relationship or restraint on Mr. Williams' freedom. *Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459, 465–66 (3d Cir.1990) (there was no custodial restraint and therefore, no special relationship between the state and an intellectually disabled person because he enjoyed the freedom of movement and his parents could have removed him to another institution if they wished). Mr.

7

Williams has therefore failed to allege circumstances that created a "special relationship" between him and the District.

### b. Mr. Williams Has Not Adequately Alleged a State-Created Danger.

Even though the Supreme Court has not recognized the state-created danger theory of liability, the Third Circuit has. *Johnson v City of Philadelphia*, 975 F.3d 394, 399-400 (3rd Cir. 2020). To make out a state-created danger claim, Mr. Williams must plausibly plead four things:

(1) He suffered a "foreseeable and fairly direct" harm;
(2) The District "acted with a degree of culpability that shocks the conscience";
(3) He "was a foreseeable victim … or a member of a discrete class of persons" potentially harmed "by the [District's] actions"; and
(4) The District "affirmatively used [their] authority" to "create[] a danger" or make him "more vulnerable to danger than had [they] not acted at all."

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).

Mr. Williams fails to identify a state actor that affirmatively used his or her authority in a way that restrained his personal liberty. The government has no general legal duty to keep people safe. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). But it assumes one "when it affirmatively places [a] person in a position of danger [that] the person would not otherwise have faced." *Kamara v. Att'y Gen.*, 420 F.3d 202, 216 (3d Cir. 2005).

Mr. Williams has not plead facts sufficient to satisfy the fourth element of the state-created theory of liability. To do so, he must allege that a state actor with authority committed an "affirmative act" that "amount[s] to a restraint of personal liberty [] similar to incarceration or institutionalization." *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) (quoting *Ye v. U.S.*, 484 F.3d 634, 640-41 (3d Cir. 2007). But the Complaint has no such allegations. Instead, Mr. Williams only alleges that: (1) the District failed to "protect [him] from Garland" or enact "reasonable

protective measures"; and (2) the District assured his mother that he would be kept safe but failed to do so. (ECF No. 1, at ¶¶ 68, 89, 94). The Third Circuit has explicitly held that these allegations cannot satisfy the fourth element of a state-created danger claim.

*First*, Mr. Williams' allegations that the District failed to "protect [him] from Garland" and enact "reasonable protective measures" do not allege affirmative acts. (ECF No. 1, at ¶¶ 68, 89). Courts routinely hold that such *inaction* is simply not enough to meet the fourth element of a state-created danger claim under § 1983. *See, e.g., G.S. v. Penn-Trafford Sch. Dist.*, 813 Fed. Appx. 799 (3d Cir. 2020) (school's failure to protect plaintiff-student from other students' attacks was not an affirmative act); *Gayemen v. Sch. Dist. of City of Allentown*, 712 Fed. Appx. 218 (3d Cir. 2017) (school's failure to address student-perpetrated gang violence was not an affirmative act); *Morrow*, 719 F.3d at 178-79 (school's failure to expel bully was not an affirmative act); *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006) (school's failure to follow-up on student's threats of suicide was not an affirmative act); *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739 (W.D. Pa. 2018) (school's inaction in the face of persistent bullying was not an affirmative act).

In *Lansberry*, plaintiffs sued after their seventh-grade son, W.J.L., committed suicide. *Lansberry*, 318 F. Supp. 3d at 745. Plaintiffs alleged W.J.L. experienced "intense, persistent, and malicious bullying" in school staff's presence. *Id*. W.J.L. once endured bullying in a teacher's classroom. *Id*. W.J.L. asked the teacher to let him see the guidance counselor. *Id*. The teacher refused, telling W.J.L. he "needed to stop being a baby." *Id*. W.J.L. committed suicide after a "particularly brutal day of bullying." *Id*. Despite these "tragic series of events," Judge Gibson dismissed the state-created danger claim because plaintiffs failed to plead affirmative misuse of state authority. *Id*. at 753. He reasoned the school's failure to stop the bullying, and the teacher's "insensitive and inappropriate" comment, "merely preserved the status quo." *Id*. at 756.

The result is no different here. As in *Lansberry*, the District's alleged failure to take affirmative steps to protect Mr. Williams from the bullying of a fellow student did not create or enhance a danger to Mr. Williams. It "merely preserved the status quo." *Id*. These are "classic allegation[s] of omission, a failure to do something—in short, a claim of inaction and not action." *Johnson v. City of Philadelphia*, 975 F.3d 394, 401 (3d Cir. 2020). That is not enough in the Third Circuit. These allegations cannot satisfy the fourth element of Mr. Williams' state-created danger claim.

*Second*, Mr. Williams' allegation that the District assured his mother that he would be kept safe cannot satisfy the fourth element. (*See* ECF No. 1, at ¶ 94). Third Circuit precedent holds that "assurances of well-being are not 'affirmative' acts within the meaning of the fourth element of a state-created danger claim." *Ye v. U.S.*, 484 F.3d 634, 642 (3d Cir. 2007). In other words, a school official's promise to keep a student safe is not an affirmative act. *See Brown v. Sch. Dist. of Philadelphia*, 456 Fed. Appx. 88 (3d Cir. 2011).

Brown suffered from a mental disorder that inhibited her communicative abilities. *Id*. at 90. One day, a student told her to meet him in the library for oral sex. *Id*. at 90. When Brown did not do so, he hit her on the head. *Id*. Brown and her mother met with a teacher and an assistant principle to discuss the incident. *Id*. The teacher and assistant principle promised that the school would provide Brown with one-on-one supervision to keep her safe. *Id*. But the school did not provide this supervision, and Brown was sexually assaulted in the school auditorium by five fellow students. *Id*.

Brown sued the district under a state-created danger theory. *Id*. at 91. To satisfy the fourth element, she argued that "school officials affirmatively promised to provide her with one-on-one adult supervision and that she and her family relied on that promise in continuing to send her to

10

school." *Id*. But "the crux of that argument," the court noted, "is that the school promised *and then failed* to provide her with the supervision." *Id*. at 91. Thus, the court held that this assurance was not an affirmative act. *Id*.

Here, too, Mr. Williams' alleges that his mother would not have sent him back to school but for the District's assurances he would be kept safe. (ECF No. 1, at ¶ 67). But as in *Brown*, the crux of that argument is that the District promised *and then failed* to keep Mr. Williams safe. This lack of affirmative action is fatal to Mr. Williams' § 1983 claim.

This result finds ample support in the Third Circuit. In one case, police assured a family that they would arrest a criminal but did not. *Bright v. Westmoreland Cnty*., 443 F.3d 276, 279 (3d Cir. 2006). The criminal then murdered a child. *Id*. The court held that "expressing an intention" to arrest without doing so was not an affirmative act. *Id*. at 284. In another, a mother asked a doctor if it was safe to visit her son in a psychiatric hospital. *Mears v. Connolly*, 24 F.4th 880, 883 (3d Cir. 2022). Though it was just days after her son had severely beaten another patient, the doctor "assured" the mother that it was safe and "encouraged" her to visit. *Id*. When the mother visited, her son beat her severely. *Id*. Since the mother "was free to say no," the court held, the doctor's encouragement and assurances "did not rob [her] of her power to choose whether to visit." *Id*. at 884. They therefore could not satisfy the fourth element of her state-created danger claim. *Id*.

These cases make clear that the District's assurances Mr. Williams "would be kept safe" were not affirmative acts within the meaning of the fourth element of a state-created danger claim. Focusing on these assurances loses sight of what a state-created danger theory vindicates— invasion of a personal liberty interest. As in *Mears*, the District's alleged statement that Mr. Williams "should be sent back to school" because he would be kept safe did not "rob" his mother "of her power to choose" whether to send him back. *Mears*, 24 F.4th 880, at 884. The assurances

11

may have influenced her decision, but "she was free to say no." *Id*. Thus, the assurances were not "a restraint of personal liberty [] similar to incarceration or institutionalization." *Id*. Similarly, Mr. Williams does not—and cannot—allege that the District in any way restrained his personal liberty. He does not allege that the District forced him to come back to school. Thus, the District's assurances cannot satisfy the fourth element of Williams' state-created danger claim.

In sum, Mr. Williams does not allege an affirmative act that restrained his personal liberty similar to incarceration or institutionalization. To find a deprivation of liberty similar to incarceration or institutionalization from the facts alleged would stretch a narrow exception—the state-created danger doctrine—beyond its clearly established bounds. Mr. Williams has thus failed to sufficiently allege a constitutional violation.

### 2. Count II – Violations of the Fourteenth Amendment Due Process Clause for Injury to Human Dignity and Bodily Integrity.

While the Complaint mentions both a deprivation of Mr. Williams' right to bodily integrity and human dignity, "§ 1983 claims involving the right to human dignity have generally only been recognized in the prisoner context." *B.D. v. Downingtown Area Sch. Dist.*, No. CV 15-6375, 2016 WL 3405460, at *2 n.3 (E.D. Pa. June 21, 2016); see also, *Dorley v. S. Fayette Tp. Sch. Dist.*, 129 F. Supp. 3d 220, 230 (W.D. Pa. 2015) (same); *Fiedler v. Stroudsburg Area Sch. Dist.,* 427 F. Supp. 3d 539 (M.D. Pa. 2019) (same). When the alleged harm is directly caused by a "third party, non-state actor," courts conclude that "there is no analytical distinction" between an injury to bodily integrity claim and a claim predicated on a state-created danger. *Dorley*, 129 F. Supp.3d at 231-232. This is because "the state created danger doctrine is one theory used to assert a claim for harm to one's bodily integrity…" *Id*. See also, *Cuvo v Pocono Mountain Sch. Dist.*, No. `8-1210, 2019 WL 1424524, at *6 (M.D. Pa. Mar.29, 2019) ("a claim under §1983 for a violation of the due

process right to bodily integrity is brought under the state-created danger doctrine.") *Keener v Hribal*, 351 F. Supp.3d 956, 970 n.6 (W.D. Pa. 2018); *R.B. by Hickey v Enterline*, No. 16-1583, 2017 WL 2536110, at *5 (M.D. Pa. June 12, 2017) ("Her claim for a violation of her Fourteenth Amendment right to bodily integrity, therefore, necessarily relies upon the sufficiency of her state created danger claim.). As a result, Mr. Williams' claim under § 1983 for violation of his substantive due process right to human dignity under the Fourteenth Amendment merges with his recognized substantive due process right to bodily integrity. *Id*. For the reasons stated under Count I's discussions, Count II should be dismissed.

### B. Mr. Williams' § 1983 Claims Fail Because He Has Not Identified a District Policy Or Custom That Caused a Violation of His Constitutional Rights.

Because Mr. Williams has failed to sufficiently allege a constitutional violation, there can be no derivative municipal claim against the District. *See H.U. v. Northampton Area Sch. Dist.*, No. 20-2996, 2021 WL 4810170, at *3 (3d Cir. 2021). But even assuming he could make out an underlying violation, his claim would still fail because there is no basis for municipal liability here.

The liability of a municipality—in this case, the District—under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipal entity may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id.* at 694, 98 S.Ct. 2018. A "School District, like a municipality, 'cannot be liable solely as an employer because there is no *respondeat superior* theory of municipal liability in § 1983 actions.' " *J.B. by and through J.B. v. Greater Latrobe Sch. Dist.,* No. 2:21-CV-00690-RJC, 2022 WL 3716941, at *6 (W.D. Pa. Aug.

29, 2022) (quoting *Brown v. Cmmw. of Pennsylvania, Dept. of Health Emerg. Med. Services Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003).

An official policy may be established under three circumstances: (1) the municipal entity adopted and promulgated a policy whose implementation caused the constitutional deprivation; (2) absent a formal policy, an official with policymaking authority violated federal law, causing the constitutional deprivation; or (3) the policymaker failed to act affirmatively even though the need to take some action was obvious, and the inadequacy of existing practice is so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Mr. Williams' Complaint raises all three theories of *Monell* liability. He alleges:

> (1) the District "developed policies, practices, plans, and procedures" (ECF No. 1, at ¶ 103);
> (2) his constitutional rights were violated by an act of a district policymaker—in this case, the Vice Principal of the School—by falsely assuring his safety (*Id*. at ¶ 59); and
> (3) the District "failed to develop policies, practices, plans, and procedures" even though the need to take some action was obvious (*Id*. at ¶ 104).

All three fail as a matter of law.

### 1. Mr. Williams' Fails to Identify a Specific District Policy That Caused A Deprivation of His Constitutional Rights.

Mr. Williams has not cited an official District policy that could be the basis of a *Monell* claim under the first theory of liability identified in *Natale*. Mr. Williams only makes the conclusory assertion that:

> Defendant School District developed policies, practices, plans, and procedures … in violation of the Constitution of the United States and which were contrary to Federal protection of the safety, rights, health, and welfare of Ny'Hier Williams[.]

14

(ECF No. 1, at ¶ 103). These allegations are merely conclusory, unsubstantiated and devoid of any facts. Mr. Williams does not identify *what* these policies were, *who* created them, *how* their implementation caused a violation of his constitutional rights, or *what* constitutional right he was deprived of. Without factual allegations supporting Mr. Williams' claim, it must be dismissed. *See Parker v. Sch. Dist. of Philadelphia*, 346 F. Supp. 3d 738, 746 (E.D. Pa. 2018); *Keener v. Hribal*, 351 F. Supp. 3d 956, 977 (W.D. Pa. 2018) (dismissing *Monell* claim because plaintiff "fail[ed] to identify the specific policy or policymaker at issue."); *Kelty v. City of Philadelphia*, No. CV 16-0306, 2016 WL 8716437, at *4 (E.D. Pa. June 10, 2016) ("[A] complaint must include specific factual allegations referencing the conduct, time, place, and persons responsible for any officially municipal policy or custom.").

### 2. Mr. Williams Fails to Identify an Official With Policymaking Authority That Caused a Deprivation of His Constitutional Rights.

Mr. Williams has not identified an official with policymaking authority who caused a deprivation of his constitutional rights. When deciding who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action, a question that is answered by looking to state law." *G.S. v. Penn-Trafford Sch. Dist.*, No. 20-3281, 2023 WL 4486667, at *3 (3d Cir. 2023). "Under Pennsylvania law, a school board may be the final policymaker with respect to some actions, while the school superintendent may be the final policymaker with regard to other actions." *Id.* (citing *McGreevy v. Stroup*, 413 F.3d 359, 368–69 (3d Cir. 2005) (a Pennsylvania school board is final policymaker regarding dismissal of employees, but the superintendent is the final policymaker over employee ratings determinations).

Here, Mr. Williams appears to allege that Brashear's Vice Principal caused a deprivation of his constitutional rights by falsely assuring his safety. (*See* ECF No. 1, ¶¶ 59, 104). But Mr. Williams does not allege that the Vice Principal had "final, unreviewable discretion to make a decision or take an action." *G.S.*, 2023 WL 4486667, at *3. Nor does Pennsylvania state law grant a Vice Principal such authority. Mr. Williams also fails to identify what constitutional right the Vice Principal deprived him of. He alleges the assurance caused him to return to school and be attacked by Garland. But public schools do not have a *constitutional* duty to protect students from other students. *Morrow*, 719 F.3d at 170. And therefore "harm caused by student-on-student bullying is not a constitutional harm that *Monell* protects against." *Lansberry*, 356 F. Supp. 3d at 503. Mr. Williams' failure to identify what constitutional right the Vice Principal deprived him of is thus equally fatal to his claim. *See Keener v. Hribal*, 351 F. Supp. 3d 956, 977 (W.D. Pa. 2018) ("A policy, practice, or custom is only unconstitutional [if] it allows *another* unconstitutional violation."). Accordingly, Mr. Williams fails to state a claim under the second theory of *Monell* liability.

### 3. Mr. Williams Cannot Prevail On A Deliberate-Indifference Theory Because He Fails to Plead the Violation of a Specific Constitutional Right.

Mr. Williams' allegations do not establish that the District acted with deliberate indifference to his constitutional rights because he fails to allege the violation of a constitutional right. "A plaintiff must plead the violation of a specific constitutional right to hold a municipality liable under a *Monell* deliberate-indifference theory." *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 498 (W.D. Pa. 2018) (citing *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016) ("To hold the school district liable for a failure to train under Section

1983, appellants must demonstrate *that there was a constitutional violation* and that the violation was caused by the school district's policy or custom.").

Mr. Williams generally alleges that the District's deliberate indifference to Garland's bullying violated his constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment. (ECF No. 1, at ¶¶ 102-117). But "[c]ourts within the Third Circuit have confronted *Monell* claims in the context of student-on-student school bullying and have consistently found that the plaintiffs failed to allege the violation of a constitutional right." *Lansberry*, 356 F. Supp. 3d at 500 (collecting cases); *see also*, *G.S. v. Penn-Trafford Sch. Dist.*, 813 Fed. Appx. 799, 803 (3d Cir. 2020) ("[Plaintiff] has not adequately pleaded a constitutional violation" because "a school's failure to respond to reports of bullying cannot give rise to liability under § 1983[.]"); *C.W. v. Manasquan Bd. of Educ.*, No. CV 21-20680 (GC), 2023 WL 2264464, at *13 (D.N.J. Feb. 28, 2023) ("[B]ullied students and their families cannot hold a school accountable under § 1983 for a failure to protect students and keep a safe environment because there is no underlying constitutional violation."); *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 Fed. Appx. 172 (3d Cir. 2016) ("Appellants cannot recover from the School District under Section 1983 for a failure to train because there was no underlying constitutional violation.").

In *Bridges*, the Third Circuit held that the plaintiff—who brought a *Monell* claim against a school district for failing to prevent student-on-student bullying—could not identify a constitutional violation. *Bridges,* 644 F. App'x at 174. There, as here, a student was persistently bullied by his classmates. *Id*. Other students physically attacked and injured him several times. *Id*. His teacher was notified of the bullying but failed to do anything about it. *Id*. at 176. The student alleged that he "was deprived of his liberty interest and right to bodily integrity as a result of the [bullying]." *Id*. The Third Circuit affirmed summary judgment for the school, noting that the

17

student's "Fourteenth Amendment claims are ultimately foreclosed by this Court's [en banc] decision in *Morrow*," which held that public schools do not have a constitutional duty to protect students from other students. *Id*. at 174.

The Court should reach the same result here: Mr. Williams does not sufficiently allege the violation of a constitutional right to support his *Monell* claim. He does not allege that the District directly violated his constitutional rights; he alleges that the District failed to prevent a third party—his classmate Garland—from doing so. But "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney,* 489 U.S. at 197, 109 S.Ct. 998. And as made clear by the Third Circuit, "a school's failure to respond to reports of bullying cannot give rise to liability under § 1983[.]" *G.S.,* 813 Fed. Appx. at 803. Mr. Williams Complaint should be dismissed.

### C. The City of Pittsburgh Board of Public Education Should Be Dismissed Because It Is An Unnecessary Party.

Even if this Court finds that Mr. Williams has stated a § 1983 claim, the City of Pittsburgh Board of Public Education should be dismissed from this action. The Board is the governing body of the Pittsburgh Public School District, a local government agency. "Sub-units of municipal government entities are unnecessary parties." *E.B. v. Woodland Hills Sch. Dist.*, No. CIV.A. 10-0442, 2010 WL 2817201, at *4 (W.D. Pa. July 16, 2010). The Board is not a political subdivision that exists independently from the School District. *See Smith v. Warwick Sch. Dist.*, No. CV 15-442, 2016 WL 3854586, at *1 (E.D. Pa. July 8, 2016) ("The Warwick School District Board of Directors is not a political subdivision that exists independently from the Warwick School District itself."). The Board is thus a redundant party, as the School District itself—a named Defendant—would ultimately be liable for any judgment entered against the Board. *Id*. (citing *Young v.*

*Pleasant Valley Sch. Dist.,* No. 07–854, 2008 WL 417739, at *10 (M.D. Pa. 2008). ("[T]here are no [] claims against [individual members of] the School Board and plaintiffs' rights can therefore be adjudicated through a lawsuit against the District"). The Board should therefore be dismissed from this action.

## CONCLUSION

This is "a classic case of constitutional line drawing in a most excruciating factual context." *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364 (3d Cir. 1992). But the constitutional line has been drawn—Third Circuit precedent forecloses Mr. Williams' claims. For that reason, they must be dismissed.

Respectfully submitted,

Dated: February 19, 2024

*/s/ Shelly R. Pagac*
Shelly R. Pagac, Esquire
Pa. I.D. No. 63327
Lourdes Sánchez Ridge, Esquire
Pa. I.D. No. 58685
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Phone: (412) 263-2000
Fax: (412) 263-2001

Ira Weiss, Esquire
Pa. I.D. No. 17408
Annemarie Harr, Esquire
Pa. I.D. No. 320764
WEISS BURKARDT KRAMER LLC
445 Fort Pitt Boulevard, Suite 503
Pittsburgh, PA 15219
Phone: (412) 391-9890
Fax: (412) 391-9685

*Counsel for Defendants City of Pittsburgh Public School District and City of Pittsburgh Board of Public Education*

*8975881*