IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NY'HIER WILLIAMS, | ) |
| Plaintiff, | ) 2:23-CV-2132-NR |
| v. | ) |
| CITY OF PITTSBURGH PUBLIC SCHOOL DISTRICT and CITY OF PITTSBURGH BOARD OF EDUCATION, | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

While a student at Brashear High School in the City of Pittsburgh Public School District, Plaintiff Ny'Hier Williams faced repeated incidents of bullying at the hands of another student, Quincey Garland. ECF 20, ¶¶ 22-26. Quincey physically assaulted Ny'Hier twice, once on September 8, 2021 (which sent Ny'Hier to the hospital) and again on September 14, 2021. *Id.* ¶¶ 26-31, 35-37.[1] Ny'Hier's mother repeatedly requested support from the school to protect her son but received none. *Id.* ¶¶ 38-43.

Quincey attacked Ny'Hier for a third time on December 15, 2021; Ny'Hier was again taken to the hospital, and a criminal action was initiated against Quincey. *Id.* ¶¶ 45-50. Terrified for her son's safety, Ms. Williams contacted the school, and she was told that Quincey "would not be returning to Brashear High School" and was being transferred to another school. *Id.* ¶ 52. On January 3, 2022, a school employee

---

[1] The Court refers to the minor students in this order by their first names for ease of reference. Additionally, the complaint and brief spells Mr. Garland's name as "Quincey" and "Quincy." ECF 20, ¶ 26; ECF 26, p. 1. For consistency, the Court will use "Quincey."

- 1 -

told Ms. Williams that Quincey was no longer at Brashear High. *Id.* ¶¶ 54-56. This statement turned out to be false. *Id.*

Ms. Williams went to Brashear to speak with the Vice Principal, who "assured Ms. Williams" that the school "could and would keep [Ny'Hier] safe, and further explained that [Quincey] was only attending temporarily while paperwork for a new placement for him was processed." *Id.* ¶¶ 58-59. But Ms. Williams remained apprehensive and pulled her son from school pending Quincey's departure "in order to protect him from further violent assaults." *Id.* ¶ 60.

On January 20, 2022, the District "affirmatively instructed and/or persuaded Ms. Williams to send [Ny'Hier] back to school, premised on the representation and assurance that he would be kept safe from [Quincey]." *Id.* ¶¶ 61-62. Ny'Hier returned to school the next day, where he discovered that Quincey was still enrolled; Quincey then attacked Ny'Hier again, resulting in a significant head injury requiring hospitalization. *Id.* ¶¶ 64-71, 81. As alleged, "[t]he only reason Ny'Hier returned to school on January 21, 2022 was because [the] District's personnel instructed and/or persuaded Ms. Williams to send Ny'Hier back to school and made assurances that he would be kept safe." *Id.* ¶ 68.

Ny'Hier sued the District and the Pittsburgh Board of Education under 42 U.S.C. § 1983 for violating his due process right to bodily integrity under the Fourteenth Amendment. Specifically, he alleges that Defendants had an affirmative duty to protect him based on the existence of a special relationship or a state-created danger, and that his injury resulted from a training, supervisory, or disciplinary failure on Defendants' part.

Defendants move to dismiss the complaint on grounds that Ny'Hier has failed to plead that a duty to protect him existed or that a constitutional violation occurred.

ECF 23.  Ny'Hier opposes the motion, though he concedes that he is "not pursuing his claims against" the Board.  ECF 26, p. 19.  The motion is now ready for disposition.

## DISCUSSION & ANALYSIS[2]

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States."  *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013) (en banc), *as amended* (June 14, 2013).  "Thus, the first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to then determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 753 (W.D. Pa. 2018) (Gibson, J.) (cleaned up).

Ny'Hier alleges that the District violated his procedural and substantive due process rights "to be free from state occasioned and/or created dangers which caused harm to his bodily integrity and human dignity" because of the attack by Quincey.  ECF 20, ¶ 87.  While individuals have a substantive right to personal bodily integrity under the Fourteenth Amendment, "the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).  "This is because the purpose of the Due Process Clause is to protect the people from the State, not to ensure that the State protects the people from each other."  *Lansberry*, 318 F. Supp. 3d at 754 (cleaned up).

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Any reasonable inferences should be considered in the light most favorable to the plaintiff.  *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

Ny'Hier acknowledges this limitation. ECF 20, ¶¶ 76, 87, 98-99, 118; ECF 26, p. 6. Even so, he argues that two exceptions to this rule apply: an affirmative duty to protect may arise (1) in certain "special relationships" between the state and particular individuals, and (2) where the state created or exacerbated the dangerous situation. *Morrow*, 719 F.3d at 167. Defendants argue that both theories fail as a matter of law. ECF 24, p. 6.

While the Court agrees that the "special relationship" exception does not apply,[3] the Court finds that the state-created danger exception does, at least as pled at this early stage.

### I. The District's affirmative misrepresentation about Quincey's presence in school and instruction for Ny'Hier to return amount to a state-created danger.

A plaintiff must plead four elements to invoke the state-created danger exception: (1) "the harm ultimately caused was foreseeable and fairly direct;" (2) "a state actor acted with a degree of culpability that shocks the conscience;" (3) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a

---

[3] The Third Circuit in *Morrow* explained that to succeed on this theory, a plaintiff must show the existence of "certain unique and narrow circumstances" that are "so significant as to forge a different kind of relationship between a student and a school than that which is inherent in the discretion afforded school administrators as part of the school's traditional *in loco parentis* authority or compulsory attendance laws." *Morrow*, 719 F.3d at 171. In other words, the circumstances must exceed the authority that is "endemic in the relationship between public schools and their students[,]" such that a heightened duty exists. *Id.* Ny'hier hasn't met that standard because he only alleges facts showing the District's knowledge that he had special education requirements and that Quincey was bullying him. ECF 20, ¶¶ 22-49. Those facts "may be relevant to determining whether the Defendants' conduct was sufficiently egregious to violate a previously existing duty to protect [Ny'hier], but that knowledge cannot create a duty that did not otherwise exist." *Morrow*, 719 F.3d at 173.

member of the public in general; and" (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016).

The District only challenges the fourth element, which the Third Circuit has noted is the most "contested" element in these types of cases.[4] *Id.* at 242; ECF 24, p. 8. The Third Circuit has also noted the "inherent difficulty in drawing a line between an affirmative act and a failure to act[,]" and the caselaw bears this out. *L.R.*, 836 F.3d at 242. That is, many of the cases turn on subtle factual differences. After reviewing these cases, the Court can discern at least three overarching principles in evaluating whether an act is affirmative.

First, assessing the status quo matters. The Third Circuit has "[found] it useful to first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo." *Id.* at 243. This makes sense because if one can discern a pivotal action by the defendant that alters the status quo, then it could signal an affirmative act. Conversely, where the lines are too blurry as

---

[4] In its reply brief, for the first time, the District argues that Ny'Hier also hasn't met the first element—that the harm caused was foreseeable and fairly direct—because Quincey's bullying was the catalyst for the harm, not the District's act of instructing Ms. Williams to send her son to school. ECF 27, p. 3. "Courts need not address arguments raised for the first time in a reply brief." *Marcum v. Columbia Gas Transmission, LLC*, 549 F. Supp. 3d 408, 420 n.4 (E.D. Pa. 2021). Even so, the argument fails because, as explained below, the District's act directly caused the harm to Ny'Hier.

to the status quo, that suggests the claim sounds more in a failure to act (not actionable), as opposed to an affirmative act (actionable).[5]

Second, choice matters. The affirmative-act requirement goes to the issue of deprivation of liberty; that is, was the plaintiff's liberty deprived by the defendant? *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) ("[A]n affirmative act must amount to a restraint of personal liberty that is similar to incarceration or institutionalization." (cleaned up)). That means that in the context of these cases, the question is whether the danger was created by the plaintiff's own choices (not actionable), or did the plaintiff lack meaningful choice or control to avoid the danger (actionable)?

Third, the facts matter, especially when the key events involve conversations and statements. *See, e.g.*, *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017) (whether football coach "used his authority in a way that rendered" an injured student-athlete "more vulnerable to harm by sending him back into the practice session" was a fact question for the jury), *as amended* (Sept. 22, 2017).

With those principles in mind, the Court concludes that Ny'Hier has sufficiently alleged a state-created danger based on the District's affirmative act. Consider first the status quo.

The status quo here was Ny'Hier being out of school due to the prior bullying. In other words, the status quo was a safe environment. Then, on January 20, 2022, according to the complaint, the District acted when it "affirmatively instructed and/or

---

[5] The question of the status quo is particularly important in the school-bullying cases. In many of these cases, there is a pervasive pattern of bullying, but no real pivotal act by the school (*i.e.*, the gist of the claim is usually a general neglect in acting in the face of bullying). *See, e.g.*, *Morrow*, 719 F.3d at 178-79; *H.J. by Wells v. Delaplaine McDaniel Sch.*, No. 17-3229, 2017 WL 5901096, at *4 (E.D. Pa. Nov. 30, 2017) ("[F]or H.J.'s complaint to rise to the level of a state-created danger, she would need to allege facts that show an active effort on the part of the school to encourage bullying, and an effort to make the school a less safe place for the children.").

persuaded Ms. Williams to send [her son] back to school" based on "the representation and assurance that he would be kept safe" because the District "[was] transferring [Mr.] Garland to another school[.]" ECF 20, ¶¶ 62, 92. Ms. Williams was led to believe from a school authority that the status quo—her son's safety—would continue, and so returned him to school the next day. *Id.* ¶¶ 63-64. But because Quincey had not been transferred, and because of the District's instruction for Ny'Hier to return, the status quo had changed from safety to danger. *See L.R.*, 836 F.3d at 244 ("Littlejohn's actions resulted in a drastic change to the classroom status quo, not a maintenance of a situation that was already dangerous.").

Next consider the question of choice. According to the complaint, the District "instructed" Ms. Williams to return her son to school. School is compulsory, and as pled, the school didn't make a request, but gave an instruction. 24 P.S. § 13-1327(a). In other words, there was no choice here.

And that leads to the last important consideration—the facts. The existence of the state-created danger largely hinges on the specifics of the conversations between Ms. Williams and the District, including the discussion on January 20. How did the District couch its statements to Ms. Williams? What was represented to her? More factual development is needed, so the issue is better suited for summary judgment after discovery. But for present purposes, Ny'Hier has pled enough to plausibly allege that the District affirmatively acted.[6]

The District makes two arguments in response—neither of which is persuasive. It first argues that the complaint here merely pleads a failure to protect, not any affirmative act. ECF 24, p. 8. Not so, for the reasons noted above.

It then argues that the complaint pleads only that the District made a false assurance, which doesn't rise to the level of an affirmative act. For this argument,

---

[6] No doubt, the complaint is a bit squirrely on the conversation, including by saying the District "instructed and/or persuaded Ms. Williams[.]" ECF 20, ¶ 62. An

the District relies on *Mears v. Connolly*. *Id.* at 11 (citing 24 F.4th 880 (3d Cir. 2022)). In *Mears*, a mother sued an institution that was treating her bipolar son when the institution encouraged the mother to visit as part of the son's treatment; the mother asked "if it was safe" to visit her son, and the doctor told her it was. *Mears*, 24 F.4th at 883. But when the nurse who was monitoring the meeting left the room, the son attacked the mother. *Id.* The Third Circuit held that the mother failed to state a claim for a state-created danger as to the doctor's assurances that the facility was safe because the doctor "did not rob [the mother] of her power to choose whether to visit. She was free to say no." *Id.* at 884.

The District is correct that a false assurance isn't enough to plead a state-created danger, but the complaint goes further than *Mears* for at least two reasons.

First, the mother in *Mears* wasn't under any obligation to visit with her son at all. *Mears*, 24 F.4th at 883. As noted above, Ny'Hier had to attend school, and as pled, Ms. Williams received an instruction, rather than an invitation, from the District to return her son to school. ECF 20, ¶ 62; *Mann*, 872 F.3d at 172. Ms. Williams and her son lacked the choice afforded to the mother in *Mears*.[7] *Cf. Mears*,

---

"instruction" by the District reflects that Ny'Hier and his mother had little choice. "Persuasion" arguably is a closer call, but also depending on the specifics of the conversation, can reasonably be construed to reflect a degree of coercion and lack of choice. The Court construes this in Plaintiff's favor at this stage.

[7] The Third Circuit has held that compulsory school attendance laws do not create a special relationship between the school and a student to establish an affirmative duty to protect. *E.g.*, *Morrow*, 719 F.3d at 171. That is correct, but that's also a separate issue. The question here is solely whether the District created a danger to Ny'Hier, and the complaint adequately alleges that the District "used [its] authority . . . to create a dangerous situation or to make [Ny'Hier] more vulnerable to danger had [it] not intervened." *Kneipp v. Tedder*, 95 F.3d 1199, 1209 (3d Cir. 1996); *Mann*, 872 F.3d at 172. That's enough at the motion-to-dismiss stage.

24 F.4th at 884 ("But Dr. Young did not rob June of her power to choose whether to visit. She was free to say no.").

Second, the doctor in *Mears* expressed an opinion that the patient's mother would be safe, which the Court analogized to an expression of an intent to help. 24 F.4th at 884; *see also Ye v. United States*, 484 F.3d 634, 635, 640 (3d Cir. 2007) (doctor's mistaken assurance that "there is nothing to worry about and that [plaintiff] is fine" could not form basis of state-created danger claim). Here, by contrast, the District told Ms. Williams that Quincey transferred to another school, and then instructed her to return her son to school. ECF 20, ¶¶ 59, 61-62, 92. This wasn't an opinion, or a mere expression of an intent to help. *Ye*, 484 F.3d at 641 ("assurance" and "expression of intent to help" don't qualify as affirmative acts). Rather, the District communicated a materially false fact, and coupled it with an instruction that Ny'Hier return to school, upon which his mother relied. That is enough to bring this case past the "mere-assurance" threshold. *Mann*, 872 F.3d at 172 (state-created danger existed for purposes of summary judgment where coach "instructed [injured plaintiff] to continue practicing"); *cf. L.R.*, 836 F.3d at 244 (3d Cir. 2016) (finding state-created danger where teacher released kindergartener into care of a stranger even after stranger failed to produce proper identification and verification).

"[B]ut for the intervention of [the District]" in making an affirmative misrepresentation about Quincey's presence at school, Ms. Williams would have continued to keep her son home "where [he] would have been safe." *Kneipp*, 95 F.3d at 1209. Put differently, Ny'Hier "was in a worse position after [the District] intervened than [he] would have been if [it] had not done so[,]" an act that "greatly

increased" the danger of risk of injury to Ny'Hier. *Id.* Thus, the Court concludes that Ny'Hier has adequately pled a state-created danger theory of liability.

**II.   The complaint adequately alleges deliberate indifference based on the District's misrepresentation and instruction to Ny'Hier.**

The District next argues that the complaint must be dismissed because there is no basis for *Monell* liability. ECF 24, p. 13. Specifically, it argues that Ny'Hier has failed to point to an official policy that deprived him of his right to due process and bodily integrity. *Id.*; *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 240 (W.D. Pa. 2015) (Hornak, C.J.).

"There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). They are: (1) "where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," (2) "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself," and (3) "where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* (cleaned up).

Ny'Hier's complaint alleges that all three situations existed here. ECF 20, ¶¶ 62, 126, 130, 140, 143. The Court concludes that, at a minimum, the complaint plausibly pleads the third situation, deliberate indifference.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (cleaned up). Ordinarily, the

plaintiff must point to "a pattern of similar constitutional violations" to demonstrate deliberate indifference, especially for claims of failure to train. *Id.* (cleaned up). But "in certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Id.* at 223 (cleaned up). Liability under this single-incident framework "depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Id.* at 223-24 (cleaned up).

Ny'Hier alleges that the District "failed to properly train its employees, to manage employees, discipline, vet, supervise, and investigate" their actions, and that such conduct amounted to "deliberate indifference to and willful disregard of Ny'Hier's health, safety, and rights." ECF 20, ¶¶ 130, 140. Reading the complaint as a whole, the Court finds that he has adequately stated a claim for failure to train based on a single incident.

The complaint alleges that the District (1) knew that Quincey had violently attacked Ny'Hier three times, and that Ms. Williams had pulled her son from school to protect him from Quincey; (2) told Ms. Williams that Quincey would be transferred to a new school; (3) did not, in fact, transfer Quincey; and (4) directed Ms. Williams to return her son to school anyway. Using the authority of the District to direct Ms. Williams to return her son to school in a manner that affirmatively misrepresented the safety of the school is an obvious institutional failing that can be properly characterized as deliberate indifference to Ny'Hier's constitutional right to bodily integrity.

The District argues that the single-incident theory doesn't work here because it was Quincey who actually hurt Ny'Hier, not the District. ECF 27, pp. 7-9. But that argument mischaracterizes the issue. The failure here was not simply a failure to

protect Ny'Hier, but that, as alleged, the District knew the school was unsafe, misrepresented that the school was safe, and used its authority to order Ny'Hier into a known dangerous situation.

### III. The Court dismisses the City of Pittsburgh Board of Education.

Ny'Hier concedes that he "is not pursuing his claims against the Board of Education." ECF 26, p. 19. Accordingly, the Court will grant the motion in this respect and dismiss the Board from the case.

*   *   *

Therefore, after careful consideration, it is hereby **ORDERED** that Defendants' motion to dismiss (ECF 23) is **GRANTED in part and DENIED in part**. The City of Pittsburgh Board of Education is dismissed from this case. In all other respects, the motion is **DENIED**.

Date: July 25, 2024

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge