**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NY'HIER WILLIAMS,                        )
                                         )
                                         )
            Plaintiff,                   )      2:23-CV-2132
                                         )
      v.                                 )
                                         )
                                         )
CITY OF PITTSBURGH PUBLIC                )
SCHOOL DISTRICT,                         )
                                         )
                                         )
            Defendant.                   )

**OPINION**

On January 21, 2022, Plaintiff Ny'Hier Williams was physically assaulted by a fellow student, Quincey Garland, while at Brashear High School. This was the fourth fight between the two students during a five-month period, and resulted in serious injuries to Ny'Hier, including major traumatic brain injury. Ny'Hier argues that not only did Brashear need to do more, but that Brashear actually created the dangerous situation that landed him in the hospital. More specifically, Ny'Hier alleges that Brashear's role leading up to this fourth and final assault amounted to a state-created danger (Count I) and *Monell* liability (Count II), in violation of Ny'Hier's constitutional rights. After the close of discovery, Defendant City of Pittsburgh Public School District ("Brashear") moved for summary judgment on both counts.

After careful consideration, this Court will grant in part and deny in part Brashear's motion. The Court finds that there is a genuine dispute of material fact for Ny'Hier's state-created danger claim. So Count I will survive. But *Monell* liability is inappropriate here, even with all facts viewed in the light most favorable to Ny'Hier. The Court will grant summary judgment in Brashear's favor as to Count II.

- 1 -

## BACKGROUND

In the fall of 2021, Ny'Hier Williams began his junior year at Brashear High School. *See* ECF 65-12 at 78:20-79:3. During his junior year, Ny'Hier got into four fights on school grounds with senior, Quincey Garland. ECF 65-14.

The first two fights took place in September. ECF 65-14. The first, on September 8, involved Ny'Hier, Quincey, and two other students "[o]n the front patio during dismissal." *Id.* The second, on September 14, again involved Ny'Hier, Quincey, the two students from September 8, and another student at Brashear. *Id.* This fight took place on the second floor of the high school. *Id.*

The fight on September 8 was graphic and caught on video by a fellow student. *See* Ex. 58. The video shows Quincey repeatedly punching Ny'Hier in the face until school officials—including Principal Kimberly Safran—broke up the fight. *Id.*; ECF 65-8 at 37:25-38:16. Assistant Principal Steven Travanti asked Quincey's mother not to send him to school the next day. *Id.* at 40:12-17.

The school attempted to schedule a meeting with the students' parents from the September 8th fight. ECF 65-11 at 98:1-18. The meeting, originally scheduled for September 10, didn't take place until late September because of parent availability. *Id.*; ECF 65-14. The second fight happened in the interim. ECF 65-14.

The meeting in late September included a mediator, two assistant principals, the four students involved in the September 8th fight, and at least one parent representative for everyone but Quincey. ECF 65-21. Quincey did not explain "why he attacked Ny'Hier." ECF 65-11 at 79:4-82:12. Chata Williams, Ny'Hier's mother, found the meeting to be unsuccessful because they did not reach any resolution for the conflict. *Id.*

The next fight between Ny'Hier and Quincey happened a few months later on December 15. ECF 65-38. The fight took place in one of Brashear's bathrooms, again caught on video by another student. Ex. 59. The video shows Quincey throwing

- 2 -

Ny'Hier to the ground, kicking and punching Ny'Hier, and throwing Ny'Hier into one of the bathroom stalls. *Id.*

Both Ny'Hier and Quincey were suspended following this December fight. ECF 65-51 at 2. Ny'Hier was suspended for two days and Quincey for ten. *Id.* Ms. Williams picked Ny'Hier up from school following the fight and spoke with Principal Safran before leaving. Ms. Williams told Principal Safran that she did not feel that Ny'Hier was safe with Quincey in the same school as her son. ECF 65-11 at 186:16-187:13. Principal Safran assured Ms. Williams that when Ny'Hier returned to school post-suspension, Quincey wouldn't be there. *Id.*

Principal Safran knew that after this December fight, it would be "a potentially dangerous or hazardous situation" for the two students to be near each other. ECF 65-8 at 82:19-83:5. Principal Safran tried to transfer Quincey to a different school, but she was ultimately unsuccessful. *Id.* at 105:3-25. Quincey returned to school on January 11, 2022—his return surprised the school administration because they believed that he was being transferred. *Id.* Principal Safran placed Quincey in in-school suspension while trying to determine next steps. *Id.* at 107:21-24.

Ny'Hier learned of Quincey's return to school on January 19. ECF 65-11 at 201:16-19. Ny'Hier told his mother that Quincey was back, and Ms. Williams immediately picked up Ny'Hier and pulled him from school because Quincey had returned. *Id.* at 202:2-8.

Ms. Williams confronted Brashear officials about Quincey returning after being assured that Quincey would not be back. *See id.* at 204:10-22. On January 20, Ms. Williams went to the high school, waited in the administration office, and demanded to speak to an administrator about her son's safety. *Id.* at 189:13-191:4, 204:10-22. Eventually, Ms. Williams spoke with Vice Principal Jeremy Askin. *Id.*

Ms. Williams was not going to let her son return to school until knowing that he was safe. *Id.* In response to Ms. Williams's concerns, Vice Principal Askin told

her two things.  First, he told Ms. Williams that there was a "safety plan" in place for when Ny'Hier returned to school with Quincey still there.  *Id.*  Second, and very importantly, he told Ms. Williams that she could be liable under truancy laws if she kept her son out of school, and that he might have to speak with a social worker if she continued to withhold Ny'Hier from school.  *Id.*  After this conversation, Ms. Williams sent Ny'Hier back to school.

There was no safety plan.  ECF 65-8 at 113:6-114:15.  The administration at Brashear High School, including Principal Safran and the vice principals, had never received formal training on how to properly implement a safety plan before January 2022.  *Id.*  When Ny'Hier returned to Brashear on January 21, there was no safety plan in place concerning Ny'Hier and Quincey.  *Id.*

Separate from a safety plan, Brashear had Quincey sign a "student contract" on the morning of January 21.  *Id.*; ECF 65-21.  Principal Safran acknowledged that these student contracts can be an element of a student's safety plan, but they themselves are different.  ECF 65-8 at 114:6-15.  There, Quincey signed and agreed to have no contact with Ny'Hier though the two were still in the same building.  ECF 65-21.

No further safety precautions were put in place for Ny'Hier's return to Brashear.  The day that Ny'Hier returned, another fight ensued.  ECF 65-14; Ex. 60. Ny'Hier doesn't remember how the fight started, but both he and Quincey began fighting in the hallway in-between class periods.  ECF 65-14; ECF 65-12 at 198:21-23.  Like the others, this fight was caught on video by a student.  Ex. 60.  The video is disturbing.  It shows Quincey forcibly beating, slamming, and kicking Ny'Hier in the head.  *Id.*  Ny'Hier was unconscious on the floor and had to be taken to Pittsburgh Children's Hospital.  ECF 65-52 at 2.

From these facts, Ny'Hier has brought two counts against Brashear under 42 U.S.C. § 1983.  At Count I, Ny'Hier alleges that Brashear created a "state-created

danger." At Count II, Ny'Hier alleges *Monell* liability against Brashear. Brashear moves for summary judgment on both counts.

## DISCUSSION & ANALYSIS

### I.    Standard of review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (cleaned up). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The moving party bears the initial burden to show the absence of a genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" summary judgment is improper. *Id.* (cleaned up).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment "is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (cleaned up).

- 5 -

## II.  Count I: State-created danger

Generally, "the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).  One exception to the general rule, and the exception that Ny'Hier invokes here, is where the state creates the dangerous situation.  "Liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process."  *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013), *as amended* (June 14, 2013) (cleaned up).

This is, no doubt, a hard claim to make.  A plaintiff must meet four elements to establish a state-created danger in violation of the Constitution: (1) "the harm ultimately caused was foreseeable and fairly direct"; (2) "a state actor acted with a degree of culpability that shocks the conscience"; (3) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general"; and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."  *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016).  Brashear alleges that Ny'Hier has not established evidence to support the first, second, and fourth elements.  ECF 63 at ¶ 2.  The Court finds that, in the light most favorable to Ny'Hier, there is enough evidence to for each element to allow this claim to proceed to a jury.  The Court takes the elements in turn.

A)   <u>The harm to Ny'Hier was foreseeable and fairly direct.</u>

The first requirement is that the harm that Ny'Hier suffered—here the physical assault by his classmate Quincey—was both foreseeable and fairly direct. The evidence most favorable to Ny'Hier shows that it was.

This first element is "a species of tort liability." *Henry v. City of Erie*, 728 F.3d 275, 283 (3d Cir. 2013) (quoting *Martinez v. California*, 444 U.S. 277, 285 (1980)). For the harm to be foreseeable, there must have been "an awareness of risk that is sufficiently concrete to put the state actors on notice of the harm." *Id.* at 282 (cleaned up). Separately, the actions of the state officials must be a "fairly direct" cause of the plaintiff's harm. *Id.* at 283.

On the "fairly direct" requirement, it's not enough that state officials' actions "set into motion a chain of events that result in harm." *Id.* The evidence must show that their "actions precipitated or were the catalyst for the harm for which the plaintiff brings suit." *Id.* at 285 (cleaned up). Even when the harm was foreseeable, the link between the officials' actions and the harm must not be "too attenuated" to be considered fairly direct. *Grau v. New Kensington Arnold Sch. Dist.*, 429 F. App'x 169, 172 (3d Cir. 2011).

There is sufficient evidence to establish that the harm was both foreseeable and a fairly direct result of Brashear's actions here. Brashear administrators were put on notice of the harm—the physical assault of Ny'Hier by Quincey. The two students got into three fights before the final assault in January 2022. Brashear recognized the danger of the situation and pursued mediations and suspensions in response to the fights. Administrators were not only aware of these prior fights, Brashear's Principal knew that it would be "a potentially dangerous or hazardous situation" for the two students to be near each other. ECF 65-8 at 82:19-83:5. The final assault was foreseeable because it was foreseen.

The harm was also a fairly direct result of Brashear's actions. In the days before the January assault, Ms. Williams had pulled her son from school to protect and separate him from Quincey. An administrator then ordered Ms. Williams to return her son to school under a false promise of a safety plan and under threat of truancy. The day Ny'Hier returned, there were no meaningful safety precautions

- 7 -

taken to protect Ny'Hier from Quincey, and the assault ensued. That's enough to create a genuine dispute over whether Brashear's actions were the catalyst for the ultimate harm here.

Brashear makes three somewhat related arguments: (1) that the evidence shows that Ny'Hier started the January fight; (2) that a defendant's actions cannot be a fairly direct cause of the harm where the plaintiff caused the harm; and (3) Ny'Hier is collaterally estopped from arguing otherwise because Quincey was acquitted of assault during a criminal trial. *See* ECF 69 at 9. These arguments fail both factually and legally.

True, sometimes an intervening cause will vitiate the required link between the harm and defendants' actions such that a defendant cannot be liable. *See Grau*, 429 F. App'x at 172–73. But it's not enough that there is an intervening cause; it must be that the intervening cause renders "the subsequent harm [to be] 'too attenuated' to satisfy the 'fairly direct' component of the first element." *Id.* at 173. It's fact specific.

Here, the facts don't suggest that Brashear's role is "too attenuated" to result in liability. First, the Court disagrees with Brashear that, in the light most favorable to Ny'Hier, the evidence shows that Ny'Hier started the January fight. Ny'Hier admits that he doesn't remember how the January fight started. Ex. 65-12 at 176:17-19. Neither party deposed any other eyewitness to the January fight. Testimony that Ny'Hier can't remember who started the fight is wholly different than Brashear's representation that it was Ny'Hier's "decision to attack Quincey." ECF 69 at 9. Besides, the history of fights between the two students, the results of those fights, and the video footage of the January fight (Ex. 60) all provide circumstantial evidence and reasonable inferences that Ny'Hier didn't start the fight.

Additionally, the actions of the Brashear administration were still a fairly direct cause of this final assault, even if Ny'Hier started the fight. Brashear knew

that the harm was a fight breaking out between two of its students, within its walls, whenever the two students were nearby, and the result of the fight would be Quincey injuring Ny'Hier. One of the students starting the fight before the other wouldn't be an intervening cause, it would be the precise harm that Brashear should have sought to prevent—a fight starting that ends in Quincey injuring Ny'Hier.

Finally, Brashear invokes collateral estoppel to establish that Quincey wasn't to blame for the final fight. That is, Quincey was criminally charged for aggravated assault, and was acquitted by the jury. ECF 64 at 18. Brashear argues that such a finding is conclusive here on the issue of who started the fight. Not so.

Pennsylvania law on collateral estoppel applies because Quincey's criminal trial was in Pennsylvania state court. *See Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986).[1] Brashear would need to establish the following conditions for collateral estoppel to apply: (1) the issue decided in the prior case must be identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Id.* A court may, in considering the equities, decline to apply collateral estoppel where "a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." *See* Restatement (Second) of Judgments § 28(2)(b) (Am. L. Inst. 1982) (followed in *Rue v. K-Mart Corp.*, 713 A.2d 82, 86 (Pa. 1998)). Collateral estoppel doesn't apply here for at least three reasons.

---

[1] But federal decisions are persuasive because Pennsylvania law and federal law are aligned on this issue. *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009).

First, the issues are different. In state court, a jury rendered a general verdict that Quincey was not guilty of aggravated assault causing serious bodily injury. ECF 65-2 at 174. Here, the issue is whether an intervening cause vitiates the fairly direct relationship of Brashear's actions and Ny'Hier's injuries. Those are two different issues, and the issues must be identical (not just related) for collateral estoppel to apply. *See Schutzeus v. Pennsylvania Bd. of Prob. & Parole*, No. 2:17-CV-412-NR, 2020 WL 1911463, at *18 (W.D. Pa. Apr. 20, 2020) (Ranjan, J.), *aff'd*, No. 20-2031, 2022 WL 58541 (3d Cir. Jan. 6, 2022).

Second, Ny'Hier was not in privity with the prosecution in the criminal case. Brashear argues that the prosecution adequately represented Ny'Hier's interests. "The interests of a victim and the government . . . [must be] sufficiently similar for a finding of privity." *Doe v. Hesketh*, 828 F.3d 159, 172 (3d Cir. 2016). The Court finds that isn't the case here where Ny'Hier didn't testify in the criminal trial "because of the injuries that he sustained." ECF 65-2 at 44. Ny'Hier's interest in prosecuting a fellow student cannot be said to be "sufficiently similar" to the prosecution's interest, especially when Ny'Hier didn't and couldn't assist the prosecution in presenting evidence. *See Hesketh*, 828 F.3d at 172–73 (discussing how a victim's interests differ from those of the prosecution).

Third, the equities weigh against applying collateral estoppel. "Even when the parties are the same, an acquittal in a criminal proceeding is not conclusive in a subsequent civil action arising out of the same event." *Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n*, 767 F.3d 335, 356 (3d Cir. 2014) (quoting Restatement (Second) of Jugments § 28 comment (f)) (cleaned up). The standards between the criminal trial and the case here are different. Proving guilt beyond a reasonable doubt is a "significantly different burden" than the preponderance of the evidence standard here. *See id.* (quoting same). It would be inequitable to invoke collateral estoppel under these circumstances.

In sum, the record shows that Ny'Hier can sufficiently prove the first element to the state-created danger exception.

B)    <u>Brashear's culpability shocks the conscience.</u>

The second element to the state-created danger exception is that the state actors had to have acted with a degree of culpability that shocks the conscience. The evidence viewed most favorably to Ny'Hier satisfies this second element.

"The question of whether a given action 'shocks the conscience' has an 'elusive' quality to it." *Kaucher v. County of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006) (cleaned up). There is "no calibrated yard stick" to determine what actions satisfy the *mens rea* component. *Id.* at 425 (cleaned up). On one end of spectrum is pure negligence, which will never qualify as conscience shocking. *Id.* at 426. On the other end of the spectrum is unjustifiable intent to injure, which will most likely qualify as conscience shocking. *Id.* Any acts that fall between those two extremes are "closer calls," and require a context-specific inquiry. *Id.*

The appropriate focus here is whether Brashear administrators were rushed into a decision. Where an official has "time to make unhurried judgments," the standard of "deliberate indifference" will satisfy the conscience shocking requirement. *Sanford v. Stiles*, 456 F.3d 298, 307 (3d Cir. 2006) (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (en banc)). Deliberate indifference is the "easiest standard for a plaintiff to meet," and it "require[s] a conscious disregard of a substantial risk of serious harm." *Quinn v. Badolato*, 709 F. App'x 126, 130 (3d Cir. 2017); *L.R.*, 836 F.3d at 246 (cleaned up).

The Court finds that, at a minimum, Ny'Hier has presented evidence of deliberate indifference by school officials. Brashear officials had over a month from the third fight to the fourth to deliberate on how to protect Ny'Hier. Officials both knew that Quincey had returned to school and that Ny'Hier and his mother were willing to stay home until there was a proper safety solution. Officials had time to

deliberate and reach an unhurried judgment on how to proceed with Ny'Hier and Quincey. Further, Brashear administrators acknowledged the danger of Quincey and Ny'Hier being near each other from their history of fights *before* the January assault. Brashear then knowingly disregarded that danger by requiring Ms. Williams to return her son under a false promise of meaningful safety precautions. Based on these facts, a reasonable jury could find that the Brashear administrations' actions shock the conscience.

C)   Ny'Hier was a foreseeable victim of Brashear's administrators' conduct.

The third element that Ny'Hier must prove is that "some sort of relationship exist[ed] between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the state actor's conduct." *L.R.*, 836 F.3d at 247. "The bar for proving this element is not terribly high" because a plaintiff only has to show that he "is a member of a group that is subject to potential harm brought about by the state's actions." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017), *as amended* (Sept. 22, 2017). The Court finds that Ny'Hier can establish this element because a student in frequent contact with the principal and vice principals of a school stands in such relationship with those administrators. *See id.* (finding that "a student-athlete stands in such a relationship with the coaching staff"). Indeed, Brashear doesn't challenge this element.

D)   Brashear affirmatively used its authority in a way that created the danger to Ny'Hier.

Brashear also argues that Ny'Hier cannot sufficiently prove the fourth element. The Court finds enough evidence on the record to present the state-created danger claim to a jury.

After Brashear challenged this element in its motion to dismiss, the Court acknowledged the "inherent difficulty in drawing a line between an affirmative act and a failure to act." *L.R.*, 836 F.3d at 242; ECF 29 at 5. In response, the Court drew

from the caselaw and outlined the "three overarching principles in evaluating whether an act is affirmative" enough to satisfy this final element.  ECF 29 at 5-6.  For many of the same reasons as before, the Court finds that the evidence most favorable to Ny'Hier satisfies this final requirement.

First, the status quo matters.  The Court must "ask whether the state actor's exercise of authority resulted in a departure from [the environment before the alleged act]."  *L.R.*, 836 F.3d at 242; ECF 29 at 5.  When a plaintiff can point to an act from the defendant that altered the status quo, that suggests that the state actor took an affirmative act (actionable), as opposed to the state actor failing to act (not actionable).[2]  ECF 29 at 5–6.  Second, choice matters.  The constitutional issue is a deprivation of liberty, meaning that the defendant's "affirmative act must amount to a restraint of personal liberty."  *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) (cleaned up).  The focus is whether "the danger was created by the plaintiff's own choices" or if the plaintiff "lack[ed] meaningful choice or control to avoid the danger."  ECF 29 at 6.  Third, the facts matter.  Many of the cases come down to very fine and specific factual differences.  *See, e.g.*, *Mann*, 872 F.3d at 172.  (whether football coach "used his authority in a way that rendered" an injured student-athlete "more vulnerable to harm by sending him back into the practice session" was a fact question for the jury); ECF 29 at 6.

With these same principles in mind, the Court finds that a reasonable jury could find that Ny'Hier has satisfied the final element here.

---

[2] The question of the status quo is particularly important in the school-bullying cases. In many of these cases, there is a pervasive pattern of bullying, but no real pivotal act by the school (*i.e.*, the gist of the claim is usually a general neglect in acting in the face of bullying).  *See, e.g.*, *Morrow*, 719 F.3d at 178-79; *H.J. by Wells v. Delaplaine McDaniel Sch.*, No. 17-3229, 2017 WL 5901096, at *4 (E.D. Pa. Nov. 30, 2017) ("[F]or H.J.'s complaint to rise to the level of a state-created danger, she would need to allege facts that show an active effort on the part of the school to encourage bullying, and an effort to make the school a less safe place for the children.").

First, the status quo was that Ny'Hier was home, away from Brashear, and away from Quincey.  After an administrator told Ms. Williams that her son had to return to Brashear (where Quincey was), that resulted in a departure from the status quo.  Ny'Hier was now back in the same building as Quincey.

Second, a reasonable jury could find that Ms. Williams and Ny'Hier didn't have any meaningful choice but to return.  Perhaps the most important fact in this case is that an administrator threatened truancy if Ms. Williams didn't return her son to Brashear.  That same administrator told Ms. Williams that there was a safety plan in place to protect Ny'Hier when there was none.  A jury could find that Ms. Williams and Ny'Hier had no meaningful choice but to return to school.

Third, specific facts of the conversation between Brashear and Ny'Hier's mom are important and establish that Brashear actively forced Ny'Hier into a dangerous situation.  In the Court's order denying the motion to dismiss, the Court made clear that what was represented to Ms. Williams when she spoke with Brashear officials would be critical.  ECF 29 at 7.  Now we know.  According to Ms. Williams's deposition, Brashear told her that she would violate the law if she continued to withhold her son from school, that social services might have to get involved, and that the school had a substantive plan to protect Ny'Hier from Quincey.  ECF 65-11 at 189:13-191:4, 204:10-22.  A reasonable jury could find that those facts amount to Brashear coercively using its authority to affirmatively create the danger of Quincey assaulting Ny'Hier.

In sum, there is enough evidence to support each contested element of the state-created danger exception.  Ny'Hier's claim survives summary judgment.

### III.   Count II: *Monell* liability

At Count II, Ny'Hier alleges that Brashear is liable under a theory of *Monell* liability.  The Court will grant Brashear's motion for summary judgment and dismiss Ny'Hier's *Monell* claim.

A municipality isn't liable under a theory of *respondeat superior* for the unconstitutional acts of its employees. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Id.* *Monell* liability requires that a municipality's policy, or a municipality's failure to train its employees, must be the "moving force behind the constitutional tort." *Id.* (cleaned up). A municipality must have "'actually caused' the constitutional violation." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 391 (1989)).

When a plaintiff pursues a "failure-to-train" theory, it must be that the municipality's "failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Id.* (cleaned up). "Deliberate indifference is a stringent standard of fault." *Id.* at 223 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 410 (1997)) (cleaned up). Like in the state-created danger exception, proof of deliberate indifference requires "that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (cleaned up). But there is an important difference between the deliberate indifference standard here and under the state-created danger exception. The "who" is different. Under Ny'Hier's state-created danger claim, the focus is whether the Brashear administrators *who interacted with Ny'Hier* acted with a deliberate indifference toward his constitutional rights. Under this failure-to-train theory, the focus is whether the decisionmakers in charge of the Brashear's policies and customs acted with a deliberate indifference toward Ny'Hier's constitutional rights.

There are two scenarios where decisionmakers can be said to have acted with deliberate indifference in failing to train their employees. The first is where decisionmakers are put on notice. *Id.* A pattern of constitutional violations will likely put decisionmakers on notice that new training is necessary, and that continuing to

adhere to an approach resulting in constitutional violations amounts to a deliberate indifference of those rights. *Id.* Without notice of repeated constitutional violations, "decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (cleaned up).

But the second scenario doesn't require prior notice of repeated constitutional violations. "The need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights." *Id.* (citing *Canton*, 489 U.S. at 390 n.10) (cleaned up). This is called a "single-incident" failure-to-train theory. "Liability in single-incident cases depends on 'the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223–24 (quoting *Bryan Cnty.*, 520 U.S. at 409). There are only a "narrow range of circumstances" to support a single-incident failure-to-train theory. *See Connick v. Thompson*, 563 U.S. 51, 63–67 (2011).

Ny'Hier is pursuing a single-incident failure-to-train theory. ECF 66 at 40. He argues that Brashear's failure to train its employees on how to create and implement a safety plan is sufficient to support his *Monell* claim. *Id.* The Court disagrees.

Brashear's failure to train its employees on safety plans does not amount to a deliberate indifference of Ny'Hier's constitutional rights. Ny'Hier must show both that: (1) there was a likelihood that the constitutional violation would recur; and (2) it was predictable that school officials lacked the necessary tools to prevent the particular constitutional violation. *See Cumberland Cnty.*, 749 F.3d at 223–24. On that first point, Ny'Hier didn't offer any evidence for why it was likely the constitutional violation would recur. The constitutional violation here is a deprivation of Ny'Hier's bodily integrity via a state-created danger. *See Phillips*, 515 F.3d at 235. The constitutional violation thus depended on Brashear officials taking affirmative actions, changing the status quo, and having an awareness of the risks to

Ny'Hier such that harm was foreseeable. Ny'Hier hasn't offered any evidence to believe that this type of constitutional violation was likely to recur. That is, there isn't any evidence that Brashear officials would likely repeatedly take affirmative action to change the status quo in defiance of foreseeable risk to the bodily autonomy of its students.

Similarly, Ny'Hier didn't offer any evidence to prove why it was predictable that Brashear officials lacked the necessary tools to prevent deprivations to the bodily integrity of its students via a state-created danger. Ny'Hier's claim here isn't a general failure to train employees on safety precautions, it's specific to a safety plan. Ny'Hier hasn't shown why Brashear officials needed training on safety plans to prevent this type of injury. Brashear had five security officers, security cameras on every floor, teachers standing out in the halls in-between class periods, and hall-sweeps for students skipping class. ECF 64 at 8. Specific to Ny'Hier, administrators held a mediation, issued suspensions, and began transferring Quincey in an effort to protect Ny'Hier.[3] There's no evidence that constitutional violations were predictable because of a lack of training on safety plans.

Here, the failure to train also didn't cause the constitutional injury, another element that Ny'Hier must prove to establish *Monell* liability. It's not enough that Brashear officials "could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *See Cumberland Cnty.*, 749 F.3d at 226 (cleaned up). The focus is whether the injury could have been avoided if the proper training had occurred. *Id.* There were other safety precautions in place, so Ny'Hier needed to prove why this lack-of-training was

---

[3] These actions weren't enough to defeat Ny'Hier's state-created danger claim for the reasons discussed. But here, the focus is broader because the Court must assess how predictable this type of constitutional violation was on a systemic level. Brashear's general security measures and security measures as applied to Ny'Hier are useful evidence for this predictability prong.

crucial.  An expert's opinion can often help with the causation prong, but Ny'Hier never offered any.  *See id.* at 226–27 (noting that an expert's opinion on the effect of a state decisionmaker's failure-to-train is useful evidence for evaluating the causation prong).  In short, Ny'Hier did not offer enough evidence to show that his constitutional injury could have been avoided with this additional training.

When viewed in a light most favorable to Ny'Hier, there is not a genuine dispute of material fact at Count II.  *Monell* liability is inappropriate here, so the Court will grant Brashear's motion as to Count II.

**CONCLUSION**

For the above reasons, the Court will grant summary judgment in favor of Defendant on Count II, but will deny it on Count I.  A separate order follows.

DATED this 3rd day of April, 2026.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge